1  Mia Farber (SBN 131467)
   Mia.Farber@jacksonlewis.com
2  Adam Y. Siegel (SBN 238568)
   Adam.Siegel@jacksonlewis.com
3  Eric J. Gitig (SBN 307547)
   Eric.Gitig@jacksonlewis.com
4  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
5  Los Angeles, California  90017-5408
   Telephone:  (213) 689-0404
6  Facsimile:  (213) 689-0430

7  Attorneys for Defendant
   ADECCO USA. INC.

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  ANGELA DURAN, on behalf of herself and all others similarly situated, | Case No.: |
| 13                    Plaintiff, | **DEFENDANT ADECCO USA, INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT** |
| 14        vs. | **COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA** |
| 15  ALLEGIS GLOBAL SOLUTIONS, INC., a Maryland corporation; ALLEGIS GROUP | **PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)** |
| 16  HOLDINGS, INC., a Maryland corporation; ADECCO USA, INC. a Delaware corporation; | |
| 17  BEST BUY WAREHOUSING LOGISTICS, INC., a surrendered Delaware corporation; | (Filed concurrently with Declarations of Adam Y. Siegel and Megan Guyton; Civil Case Cover Sheet; Notice of |
| 18  BEELINE.COM, INC., a Florida corporation; ADELE ALVAREZ, an individual; and | Interested Parties; and Corporate Disclosure Statement) |
| 19  DOES 1 through 100, inclusive, | |
| 20                    Defendants. | |

21

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1  **TO THE HONORABLE CLERK OF THE ABOVE-ENTITLED COURT,**
2  **ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that Defendant ADECCO USA, INC. ("Adecco") hereby
4  invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and
5  1453, and removes the above-entitled action from the Superior Court of the State of California
6  for the County of San Francisco based on the Class Action Fairness Act of 2005 ("CAFA").
7  Adecco submits this Notice of Removal without waiving any defenses to the claims asserted
8  by Plaintiff ANGELA DURAN ("Plaintiff") and without conceding Plaintiff has pled claims
9  upon which relief can be granted.  This removal is based on the following grounds:

10      1.      On October 7, 2020, Plaintiff filed an unverified Class Action Complaint against
11  Adecco, Allegis Global Solutions, Inc., Allegis Group Holdings, Inc., Best Buy Warehousing
12  Logistics, Inc., Beeline.Com, Inc., and Adele Alvarez (collectively, "Defendants") in the
13  Superior Court of the State of California for the County of San Francisco entitled *ANGELA*
14  *DURAN, on behalf of herself and all others similarly situated, Plaintiffs, v. ALLEGIS*
15  *GLOBAL SOLUTIONS, INC., a Maryland corporation; ALLEGIS GROUP HOLDINGS,*
16  *INC., a Maryland corporation; ADECCO USA, INC. a Delaware corporation; BEST BUY*
17  *WAREHOUSING LOGISTICS, INC., a surrendered Delaware corporation; BEELINE.COM,*
18  *INC., a Florida corporation; ADELE ALVAREZ, an individual; and DOES 1 through 100,*
19  *inclusive, Defendants*, Case No. CGC-20-587209, which sets forth the following twelve
20  causes of action:  (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3)
21  failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties;
22  (6) wage statement violations; (7) unfair competition; (8) civil penalties under Labor Code §
23  210; (9) violations of Labor Code § 226.3; (10) violation of Labor Code § 558; (11) violation
24  of Labor Code § 1197.1; and (12) civil penalties under Labor Code § 2699 (the "Complaint").
25  As stated in paragraphs 1 and 34 therein, the Complaint is brought as a class action on behalf
26  of Plaintiff and "a class of all current and former non-exempt employees of Defendants within
27  the State of California at any time commencing four (4) years preceding the filing of
28  Plaintiff's complaint up until the time that notice of the class action is provided to the class."

2.     Adecco first received Plaintiff's Summons, Complaint and Civil Case Cover Sheet when it was served on November 16, 2020.  (Declaration of Adam Y. Siegel ("Siegel Decl.") at ¶ 2.)  True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by Adecco on November 16, 2020 are attached as **Exhibit "A"** to the Siegel Declaration.

3.     On December 11, 2020, Adecco filed and served an Answer to the Complaint in San Francisco County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  (Id. at ¶ 3.)  A true and correct copy of Adecco's Answer is attached as **Exhibit "B"** to the Siegel Declaration.

4.     As of today, **Exhibits "A"** and **"B"** to the Siegel Declaration constitute all of the pleadings received or filed by Adecco in this matter.  (Id. at ¶ 4.)

## TIMELINESS OF REMOVAL

5.     This Notice of Removal has been filed within thirty (30) days after Adecco was first served with a copy of Plaintiff's Summons and Complaint on November 16, 2020. (Id. at ¶ 2.)  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE

6.     This action was filed in the Superior Court in and for the County of San Francisco.  Thus, pursuant to 28 U.S.C. § 1441(a), Adecco is removing this action to the United States District Court for the Northern District of California as the district "embracing the place where [the] action is pending."[1]

---

[1]     Adecco is removing this action to the Northern District of California but notes that Plaintiff resided in Tulare County during her employment with Adecco, is believed to currently reside in Tulare County, and performed all of the work giving rise to her claims in Tulare County.  (Declaration of Megan Guyton ("Guyton Decl.") at ¶ 5.)  Plaintiff also is believed to have attended adult school and community college in Tulare County prior to commencing employment with Adecco.

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

7.    Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.*
Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8.    In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332 (d)(5).

9.    As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants.  *See* 28 U.S.C. §§ 1332(d) and 1453.[2] Furthermore, none of the Defendants are a State, State official, or other governmental entity.

**A.    The Putative Class Contains More Than 100 Members.**

10.    CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).

11.    Here, Adecco's records identify in excess of 1,430 individuals who are or were employed by Adecco as non-exempt employees and deployed to work at a warehouse for Defendant Best Buy Warehousing Logistics, Inc. in the State of California between October 7, 2016 (four years prior to the filing of the Complaint) and the present (collectively referred

---

[2]    Adecco does not need the consent of the other defendants to properly remove this action. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 … by any defendant without the consent of all defendants.").  Nevertheless, Defendants Allegis Global Solutions, Inc., Allegis Group Holdings, Inc., and Best Buy Warehousing Logistics, Inc. have consented to this removal. (Siegel Decl. at ¶¶ 6, 7.)

to herein as "Putative Class Members" or the "Putative Class"; the period between October 76, 2016 and the present is referred to herein as the "Putative Class Period").  (Guyton Decl. at ¶ 7.)  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    None Of The Named Defendants Are Government Entities.**

12.    Adecco is not a State, a State official, or any other governmental entity. (Guyton Decl. at ¶ 3.)

13.    Upon information and belief, none of the remaining Defendants – Allegis Global Solutions, Inc., Allegis Group Holdings, Inc., Best Buy Warehousing Logistics, Inc., Beeline.Com, Inc., and Adele Alvarez – are a State, a State official, or any other governmental entity.

**C.    Minimal Diversity Is Satisfied Under CAFA.**

14.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

15.    Citizenship of the parties is determined by their citizenship status at the action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

/ / /

16.    For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).   While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship.  *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment.  *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D. Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S. Dist. LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

17.    Adecco is informed and believes that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California.  (Guyton Decl. at ¶ 5.)  Furthermore, Plaintiff alleges that she was employed by Defendants in San Francisco County.   (Siegel Decl. at ¶ 2, **Exhibit "A"** ["Complaint"] at ¶ 17.)   Accordingly, for purposes of removal under CAFA, Plaintiff is a citizen of the State of California.

18.    For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c).  With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities.  *Id*.  A corporation can only have one "nerve center."  *Id.* at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state.  *Id*.

/ / /

19.    At the time Plaintiff filed the Complaint and presently, Adecco has been a corporation organized under the laws of the State of Delaware. (Guyton Decl. at ¶ 4.) At all relevant times, Adecco's company headquarters, and thus its principal place of business, has been in the State of Florida. (Id.) The State of Florida is where Adecco's high-level officers, including its Chief Executive Officer, direct, control, and coordinate the company's activities. (Id.) Adecco's executive operations are managed from the State of Florida, including, but not limited to, operations relating to administering company policies and procedures, legal affairs, and general business operations. (Id.) None of Adecco's executive officers reside in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, Adecco is a citizen of the States of Delaware and Florida, and is not a citizen of the State of California.

20.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while at least one Defendant (Adecco) was – and still is – a citizen of the States Delaware and Florida.[3] 28 U.S.C. § 1332(d)(2).

**D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[4]**

21.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under

---

[3]    The citizenship of the remaining Defendants – Allegis Global Solutions, Inc., Allegis Group Holdings, Inc., Best Buy Warehousing Logistics, Inc., Beeline.Com, Inc., Adele Alvarez, and the Doe defendants – are immaterial for the purposes of determining whether CAFA's minimal diversity requirements are satisfied. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices."); *see also* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

[4]    Adecco denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Adecco also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case …. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly ….").

22.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

23.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d

395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

24.    In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987));

1    *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D.

2    Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing

3    an action under CAFA to make assumptions when calculating the amount in controversy—

4    such as assuming a 100 percent violation rate, or assuming that each member of the class will

5    have experienced some type of violation—when those assumptions are reasonable in light of

6    the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d

7    1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the

8    amount in controversy when the complaint does not allege a more precise calculation.").

9    26.    While Plaintiff does not allege a specific amount in damages, her Complaint was

10   filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such, Plaintiff

11   is claiming the monetary damages and restitution she is seeking exceeds the $25,000 minimum

12   jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that she

13   designated her case as "Unlimited (Amount demanded exceeds $25,000)" on her Civil Case

14   Cover Sheet. (Siegel Decl. at ¶ 2, **Exhibit "A"** [Civil Case Cover Sheet].)  Plaintiff further

15   contends that her claims "are typical of those claims which could be alleged by any Class

16   Members, and the relief sought is typical of the relief which would be sought by each Class

17   Member in separate actions," and that "Plaintiff and Class Members sustained injuries and

18   damages arising out of and caused by Defendants' common course of conduct."  (Complaint

19   at ¶ 40.)    Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is

20   seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member,

21   which places over **$35,750,000** in controversy ($25,000 x 1,430 Putative Class Members).

22   (Guyton Decl. at ¶ 7.[6])  *See Abrego v. The Dow Chem. Co*., 443 F.3d 676, 689 (2006) (finding

23

24   _____

      [5]    *See* California Code of Civil Procedure §§ 86(a) and 88.

25   [6]    Although the Putative Class Period spans from October 7, 2016 to the present, all
     calculations used in this Notice of Removal are based on Adecco's payroll data for Putative

26   Class Members during the limited period of October 7, 2016 to September 3, 2020.
     (Guyton Decl. at ¶¶ 6-9.)  The fact that Adecco did not include potential exposure for two

27   months of the Putative Class Period further demonstrates how conservatively the amount

28   in controversy was calculated for purposes of this removal.

jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

27. In the alternative, and without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[7] also conservatively places an aggregate amount in controversy exceeding **$5,480,200**, exclusive of attorneys' fees, interest, and costs, as follows:

a. <u>First Cause of Action – Failure to Pay Overtime Wages</u>: Plaintiff alleges that she and Putative Class Members, "at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants, at times, failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay." (Complaint at ¶¶ 22, 48-50.)  Given these purported violations, Plaintiff claims she and Putative Class Members are entitled to recover overtime wages for "at the rate of no less than one and one-half times the regular rate of pay" for "[a]ny work in excess of eight hours in one workday and any work in excess of forty hours in one workweek," and "at the rate of no less than twice the regular rate of pay" for "[a]ny work in excess of 12 hours in one day [and] in excess of eight hours on any seventh day of a workweek." (Id. at ¶¶ 46, 47 (citations omitted).)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime wages per week for all Putative Class Members, which would place over <u>$195,000</u> in controversy in connection with her overtime claim ($19.50 overtime rate [$13.00[8] x 1.5] x 1 hour per week x 10,000 workweeks).  (Guyton Decl. at ¶ 8.)

/ / /

---

[7]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

[8]    For purposes of this Notice of Removal, Adecco conservatively utilized the combined average hourly rate earned by Putative Class Members during the Putative Class Period rounded down to the nearest dollar ($13.00), unless otherwise indicated.  (Guyton Decl. at ¶ 8.)

b.    <u>Second Cause of Action – Failure to Pay Minimum Wages</u>: Plaintiff claims that "Defendants failed, at times, to accurately track and/or pay for all hours actually worked at [Plaintiff and Class Members'] regular rate of pay that is above the minimum wage," and that "Plaintiff and Class Members are entitled to recover the full amount of unpaid minimum wages [and] liquidated damages." (Complaint at ¶¶ 23, 54-56.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of minimum wage per week for all Putative Class Members, which would place over $200,000 in controversy in connection with her minimum wage claim ($10.00 minimum hourly wage rate[9] x 1 hour per week x 10,000 workweeks plus an equal amount in liquidated damages).  (Guyton Decl. at ¶ 8.)

c.    <u>Third Cause of Action – Failure to Provide Meal Periods</u>: Plaintiff alleges that "Defendants have, at times, failed to provide … full, timely thirty (30) minute uninterrupted meal period[s] for days on which they worked more than five (5) hours in a work day and a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (1) hours in a work day." (Complaint at ¶¶ 24, 61-64.)  Plaintiff further asserts that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods," and that Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods." (Id.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week for all Putative Class Members, which would place over $130,000 in controversy in connection with her meal period claim ($13.00 hourly rate x 1 meal period per week x 10,000 workweeks).  (Guyton Decl. at ¶ 8.)

/ / /

---

[9]    For purposes of calculating potential minimum wage damages in this Notice of Removal, Adecco conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($10.00 per hour) for all calculations. *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

d.    <u>Fourth Cause of Action – Failure to Provide Rest Periods</u>: Plaintiff alleges that "Defendants have, at times, failed to authorize and permit … rest periods of at least ten (10) minutes per four hours worked or major faction thereof" and that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant rest periods." (Complaint at ¶¶ 25, 69-72.)  Plaintiff further asserts that "Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant [rest] periods (Id. at ¶ 72.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week for all Putative Class Members, which would place over <u>$130,000</u> in controversy in connection with her rest period claim ($13.00 hourly rate x 1 rest period per week x 10,000 workweeks).  (Guyton Decl. at ¶ 8.)

e.    <u>Fifth Cause of Action – Failure to Pay All Wages Due Upon Termination</u>: Plaintiff asserts that "Defendants, due to the failure, at times, to provide overtime wages …, [willfully] failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination," thereby entitling Plaintiff and Putative Class Members to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days." (Complaint at ¶ 26, 76-80.)  During the applicable three-year statute of limitations period (*i.e.*, October 7, 2017 to the present), at least 1,380 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Adecco.  (Guyton Decl. at ¶ 7.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $4,305,600 in controversy in connection with her claim for waiting time penalties (1,380 Putative Class Members x $13.00 hourly rate x 8 hours x 30 days).  (Id. at ¶¶ 7, 8.)

f.    <u>Sixth Cause of Action – Failure to Provide Accurate Wage Statements</u>: Plaintiff alleges that "Defendants, at times, [knowingly, intentionally, and willfully] failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements." (Complaint at ¶¶ 27, 84-85.)  Given these purported violations, Plaintiff claims

she and Putative Class Members "are entitled to recover $50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate $4,000.00 per employee." (Id. at ¶¶ 86-88.) During the one-year statute of limitations period mandated under Labor Code section 226 (*i.e.*, October 7, 2019 to the present), Adecco has issued in excess of 5,950 weekly wage statements to over 784 Putative Class Members. (Guyton Decl. at ¶ 9.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $519,600 in controversy in connection with her wage statement claim ($50 per first wage statement x 784 Putative Class Members who worked between October 7, 2019 and September 3, 2020, plus $100 per each subsequent wage statement x 5,166 pay periods worked by Putative Class Members between October 7, 2019 and September 3, 2020, up to a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

28.    Plaintiff also seeks an unspecified amount of attorneys' fees in her Complaint, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 18, 33, 50, 56, 64, 72, 88, 116, Prayer for Relief.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys'

fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, 2018 U.S. Dist. LEXIS 78510, at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

29.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also, e.g.,Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (noting that federal courts have consistently approved of attorney fee awards over the 25% benchmark, specifically at a rate of 30% or higher); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

30.    The Court should therefore consider attorneys' fees of at least $1,370,050, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g., Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the

calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at \*11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (**$6,850,250**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

32.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Francisco County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

33.    Based on the foregoing, Adecco hereby removes the above-captioned action from the San Francisco County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

Dated:  December 16, 2020          JACKSON LEWIS P.C.


By:        */s/ Adam Y. Siegel*
          Mia Farber
          Adam Y. Siegel
          Eric J. Gitig

          Attorneys for Defendant
          ADECCO USA, INC.

4841-0719-8419, v. 1