UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA DURAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALLEGIS GLOBAL SOLUTIONS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-09025-JD<br><br>**ORDER RE REMAND**<br>Re: Dkt. No. 19 |

Plaintiff Duran, on behalf of herself and a putative class of current and former warehouse workers, sued defendants Adecco USA, Inc., Best Buy Warehousing Logistics, Inc. (Best Buy), and affiliated parties, for a variety of wage and hour claims under California state law. Dkt. No. 1-2. The complaint was originally filed in the San Francisco Superior Court, and was removed by Adecco under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1.

Duran says the case should be remanded because Adecco's notice of removal did not plausibly demonstrate the CAFA elements of minimum diversity of citizenship, or a reasonable likelihood that the amount in controversy is at least $5 million. Dkt. No. 19 at 8-9. Adecco opposes a remand on the grounds that both requirements have been established. *See* Dkt. No. 20. Best Buy filed a separate opposition addressing only the amount in controversy. *See* Dkt. No. 21.

The parties' familiarity with the record is assumed. Adecco has adequately demonstrated minimum diversity for CAFA purposes. But Adecco and Best Buy used unreasonable and arbitrary assumptions to estimate the amount in controversy, and have not demonstrated a realistic possibility that $5 million or more is in play. Consequently, the case is remanded to the Superior Court.

**DISCUSSION**

The Court has detailed the standards of CAFA removal in other cases, and incorporates those discussions here. *See Anderson v. Starbucks Corp.*, No. 3:20-cv-01178-JD, 2020 WL 7779015 (N.D. Cal. Dec. 31, 2020); *Moore v. Dnata Inflight Catering LLC*, Case No. 20-cv-08028-JD, 2021 WL 3033577 (N.D. Cal. July 19, 2021).

As in *Moore*, which featured a very similar complaint filed by the same counsel for plaintiffs here, Duran does not contend that the putative class is less than 100 individuals. The complaint alleges a class of "over seventy-five (75) Class Members," Dkt. No. 1-2 ¶ 37, and Adecco filed a declaration stating that "over 1,430 non-exempt employees" fit the putative class definition during the pertinent time period, Dkt. No. 1-3 ¶ 7 (Guyton Decl.). Duran does not contest this headcount. *See* Dkt. No. 19 at 8-9. Best Buy did not file its own notice of removal, but submitted in opposition to the remand motion a declaration referencing 1,614 employees. *See* Dkt. No. 21-2 ¶ 2 (Flint Decl.). Duran did not respond to Best Buy's estimate in any way.

Duran also challenges the minimum diversity of citizenship required for CAFA. Dkt. No. 19 at 20. Duran says that Adecco failed to show she is a citizen of California, and so diverse from Adecco, which is alleged in the notice of removal to be a citizen of Delaware and Florida. *See* Dkt. No. 1 at 7.

The diversity issue is readily dispatched, which may be why Duran made no further mention of it in her reply brief. *See* Dkt. No. 25. The complaint alleges that Duran is a California resident and that she was employed in San Francisco County. Dkt. No. 1-2 ¶¶ 2, 17. For jurisdictional purposes, citizenship of an individual is determined by the place of domicile, meaning where she resides and intends to remain. *Kanter v. Warner-Lambert, Co.*, 265 F.3d 853, 857 (9th Cir. 2001). To be sure, residency and citizenship are not necessarily one and the same, *Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019), but Adecco has adduced a number of other facts indicating that Duran is a California citizen. These facts are presented in declarations by an Adecco employee relations advisor and a branch manager, which state that Duran maintained a California address, and that she was employed by Adecco in California in 2018 and 2019. Guyton Decl. ¶ 5; Dkt. No. 20-1 ¶ 4 (Jaurique-Escobar Decl.).

2

Duran did not contest any of these facts, and did not proffer counter-evidence to establish a domicile outside California. Consequently, minimum diversity is present. Best Buy did not address the diversity issue in its opposition, Dkt. No. 21, but it is enough under CAFA that "any defendant" is diverse from the plaintiff, as Adecco has shown. *See* 28 U.S.C. § 1332(d)(2)(A).

The main battleground for a remand is Duran's contention that this case will not exceed the $5 million threshold required by CAFA. Defendants have not plausibly demonstrated that it does.

To start, there is no presumption against removal when CAFA jurisdiction is alleged. *See Anderson*, 2020 WL 7779015, at *2 (under CAFA, "no antiremoval presumption applies.") (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). To the contrary, Congress intended CAFA to be interpreted expansively in favor of removal. *Id.* (citing *Arias v. Residence Inn by Marriott*, 936 F.2d 920, 924 (9th Cir. 2019)).

To establish the jurisdictional amount in controversy, a defendant must "'plausibly show that it is reasonably possible that the potential liability exceeds $5 million.'" *Id.* at *3 (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)). A defendant need not prove the jurisdictional amount with certainty, or make out the plaintiff's case for her. *Id.* (citing *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020)). Nor does the Court need to perform a detailed mathematical analysis to determine whether a defendant's showing is adequate. *Id.* "Rather, 'a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold,' and on a 'chain of reasoning that includes assumptions' based on reasonable grounds." *Id.* at *3 (quoting *Harris*, 980 F.3d at 701 and *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). Reasonable grounds may be established on the basis of the complaint and extrinsic evidence. *Id.* "'[P]rospective attorney's fees must be included in the assessment of the amount in controversy.'" *Id.* (quoting *Arias*, 936 F.3d at 922).

A plaintiff is not required to introduce extrinsic evidence to contest the defendant's estimates. She may rely entirely on "'a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence.'" *Anderson*, 2020 WL 7779015, at *2 (quoting *Harris*, 980 F.3d at 700). That is what Duran has done here. She disputes Adecco's reasoning, without introducing new evidence of her own.

### I. ADECCO

Defendants filed separate oppositions to a remand, and the Court first will take up the arguments by Adecco, which filed the notice of removal. Adecco offers two alternative estimates of the CAFA jurisdictional amount. It starts with an estimate of $36 million at stake. This is based on the fact that Duran filed the state court complaint as an "unlimited" action, meaning she is seeking more than $25,000 in damages under California Code of Civil Procedure sections 86(a) and 88. Dkt. No. 1 at 10. From that premise, Adecco infers that the complaint seeks to recover at least $25,000 for each putative class member because it alleges that Duran's claims are "typical" of those in the class. *Id.*

Adecco relies on *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006), for this ostensible reasoning, but the reliance is misplaced. The complaint in *Abrego Abrego* specifically alleged that the amount in controversy for "*each* plaintiff exceeds the minimum jurisdictional limits" for unlimited civil cases. *Id.* at 689 (emphasis in original). Duran's complaint says nothing of the same sort. All the caption states is that the "Amount in Controversy Exceeds $25,000.00." Dkt. No. 1-2 at 9. The better reading of this statement is that the complaint as a whole seeks in excess of $25,000, and not that each putative class member does so, as Adecco would have it. *Abrego Abrego* provides no basis for bootstrapping the $25,000 statement into a reasonable estimate of $36 million.

Adecco also offers an alternative estimate of approximately $5.7 million based on its valuation of six of Duran's twelve claims: unpaid overtime and minimum wages, meal and rest break violations, and waiting time and wage statement penalties. Dkt. No. 20 at 18. It also factors in an estimated 25% recovery for attorneys' fees. *Id.*

As in *Moore*, the problem that pervades Adecco's alternative estimate "is that it assumes unreasonably high rates of violations." *Moore*, 2021 WL 3033577, at *2. Adecco posits that every member of the class experienced a violation for every claim. For the waiting time penalties, Adecco says "it is reasonable for Adecco to assume that each of the 1,380 class members who were terminated [during the class period] are entitled to waiting time penalties." Dkt. No. 20 at 15 This assumption alone accounts for two thirds of the estimated $5.7 million. *See id.* at 18 (waiting

4

time penalties total $3,767,400). For the overtime, minimum wage, meal, and rest break claims, Adecco says it is reasonable to assume that each class member experienced at least one violation per week. *See* Dkt. No. 20 at 12 ("one hour of overtime wages per week"), 13 ("one hour of minimum wages per week"), 14 ("one meal period premium and one rest period premium per week").

As the Court has observed, "there are circumstances in which a 100% violation rate may be a reasonable proposition for CAFA removal purposes. A defendant may adduce facts that plausibly support such a rate, and the complaint itself may allege facts that make a 100% incident rate a reasonable inference." *Moore*, 2021 WL 303577, at *2 (citing *Anderson*, 2020 WL 7778105, at *4).

That is not the case here. Adecco did not offer any "extrinsic evidence independently validating a 100% violation rate." *Id.* Its main argument is that the complaint leaves no room for assuming less than a 100% violation rate, *see* Dkt. No. 20 at 15, but that is rebutted by the plain language of the allegations. Duran consistently alleges "occasional unlawful conduct" on the part of the defendants, and says that they acted "at times" in a manner that violated California state employment laws. Dkt. No. 1-2 ¶¶ 26, 77, 79. No numbers are attached to those qualifiers, and Duran alleges that the violations may have happened to only "some" of the putative class members during the relevant time period. *See, e.g.*, *id.* ¶ 26. Adecco points to a few allegations to the effect that it is said to have followed a "common course of conduct" and "intentionally adopted policies and practices," *id.* ¶¶ 40, 77, but "those passing comments do not dilute the complaint's overarching allegations of sporadic and intermittent practices." *Moore*, 2021 WL 3033577, at *2.

Adecco's assumption of a once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary. It would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter. Adecco again did not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the complaint that might do so. Even if it had, which is not the case, these claims contribute a modest $655,000 toward the $5 million in controversy. *See* Dkt. No. 20 at 18.

1     Adecco's assumption of a 20% violation rate for the wage statement claims is equally

2 unavailing.  Dkt. No. 20 at 17.  It does not cite to anything in the complaint to make that

3 assumption reasonable.  In effect, it says little more than that other courts may, on occasion, have

4 accepted assumptions of a 100% violation rate, see *id.* at 17, but that is of no moment in

5 explaining why an assumed 20% violation rate makes sense here.

6     With respect to attorneys' fees, Adecco's estimate of a 25% recovery is not inherently

7 unreasonable.  *See Anderson*, 2020 WL 7779015, at *4.  But Adecco applies the 25% to valuations

8 of the claims that are inherently unreasonable, and so the amount attributed to fees cannot be used

9 toward the jurisdictional threshold.  *See* Dkt. No. 20 at 17-18.

## II.   BEST BUY

Although Best Buy did not file a notice of removal in this case, it submitted a separate opposition brief, Dkt. No. 21, in which it estimated an amount in controversy of over $10 million for a putative class of "1,614 non-exempt employees employed by Best Buy" at a warehouse of distribution center during the class period.  Dkt. No. 21 at 7.  Best Buy may oppose Duran's remand motion even though it is a non-removing defendant.  *See Greene*, 965 F.3d at 775 (rejecting the argument that two of the defendants lacked standing "because they were non-removing parties.").[1]

Duran chose not to respond at all to Best Buy's opposition.  This was unhelpful.  Even so, the Court has an independent duty to ensure its jurisdiction, whether or not the parties address it.  *See* Fed. R. Civ. P. 12(h)(3); *Leventhal v. Nat'l Life Ins. Co.*, No. 19-CV-02123-JD, 2020 WL 1528447, at *3 (N.D. Cal. Mar. 31, 2020).  Consequently, the Court will resolve Best Buy's argument without the benefit of a response by Duran.

This is short work because Best Buy's estimate of a $10.5 million amount in controversy suffers from the same problems as Adecco's.  Best Buy posits that 100% of class members experienced violations for all claims, and makes the same a once-a-week violation assumption for

---

[1] Best Buy cited an unpublished order from the Southern District of Georgia for this point, see Dkt. No. 21 at 1, but *Greene*, which was filed before Best Buy's brief, provides ample support.

6

the minimum wage, meal, and rest break claims. Dkt. No. 21 at 6-7.[2] These assumptions are no more tenable for Best Buy than for Adecco. Best Buy goes a step farther than Adecco to assume a 100% rather than 20% violation rate for the wage statement penalties, which makes its assumption even less reasonable. *Id.* at 10. Overall, Best Buy's estimate is as untethered to the complaint or extrinsic facts as Adecco's, and so does not establish a reasonable possibility that the CAFA threshold has been satisfied.

The fact that Best Buy argues for removal based on a putative class of 1,614 employees "directly employed by Best Buy," Dkt. No. 21 at 2, does not change this conclusion. As an initial matter, it is not at all clear that Best Buy's direct employees are within the class definition in the complaint, or whether, as Best Buy acknowledges, Duran "is merely asserting claims on behalf of individuals who, like her, were employed by Adecco and worked at Best Buy Warehousing's distribution centers in California." *Id.* at 2-3. Best Buy suggests that "it must be assumed" that Duran is also asserting claims on behalf of those it directly employed, *id.* at 3, but why that is so is not explained. Adecco appears to have assumed otherwise, and indicates that the putative class consists of individuals like Duran, who "were deployed to work at a warehouse for Best Buy in the State of California," and not direct employees of Best Buy. *See* Guyton Decl. ¶ 7.

In any event, the Court does not need to resolve the ambiguity. Best Buy's unreasonable assumptions about the rate of violations dooms its estimates, irrespective of the size of the putative class. For the same reason, defendants cannot achieve a reasonable estimate by quilting together their individually unreasonable efforts.

**CONCLUSION**

Adecco and Best Buy have had a full and fair opportunity to present evidence and arguments for removal under CAFA and have come up short. They have failed to plausibly demonstrate that this case reasonably puts $5 million or more into play. This case was improperly removed under CAFA and is remanded to the San Francisco Superior Court.

---

[2] Unlike Adecco, Best Buy elected not include a calculation of the overtime claims in its estimate.

**IT IS SO ORDERED.**

Dated: August 2, 2021

JAMES DONATO
United States District Judge